# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PRESTON BENNETT,<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS DART, *et al.*,<br><br>    Defendants. | Case No. 18-cv-04268<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Preston Bennett sues Defendants Cook County Sheriff Thomas Dart and Cook County. He alleges that Defendants violated Section 202 of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act (Rehab Act), 29 U.S.C. § 794(a), in connection with their shower and toilet facilities in Division 10 of the Cook County Department of Corrections (CCDOC). Plaintiff moves to certify the following class under Federal Rule of Civil Procedure 23(b)(3):

> All inmates housed in Division 10 at the Cook County Department of Corrections from June 27, 2016 to the date of entry of judgment, who were prescribed either a walker, crutch, or cane by the medical staff and were denied an accommodation for toileting and showering.

[27] at 1. For the reasons explained below, this Court denies Plaintiff's motion without prejudice.

I.   **Background**

Plaintiff—an amputee who relies upon crutches to ambulate—is a former detainee at CCDOC who seeks, individually and on behalf of the proposed class, injunctive relief as well as monetary damages. [6] ¶¶ 2-10, 7; [27] (Ex. 4) at 2. Plaintiff alleges that Defendants' failure to provide grab bars in Division 10's shower and toilet facilities, as well as a fixed bench in Division 10's shower facilities, deprived him, and other detainees prescribed a crutch, cane, or walker, of rights guaranteed under Section 202 of the ADA and Section 504 of the Rehab Act. [6] ¶¶ 37−38.[1]

Plaintiff entered CCDOC on March 29, 2018. *Id.* ¶ 2. After receiving a medical intake evaluation, medical staff prescribed Plaintiff crutches and entered an order to that effect in CCDOC's management system, known as C-COMS. *Id.* ¶ 10; [27] (Ex. 5) at 1. Defendants assigned Plaintiff to CCDOC's Division 10, which routinely houses detainees with physical disabilities; he remained in Division 10 until his release on July 23, 2018. [27] (Ex. 6).

Division 10's shower facilities do not have grab bars or a fixed bench. [27] (Ex. 2) at 58:2-16. CCDOC instead provides a portable chair, available upon request. [27] (Ex. 2) at 56:6-21. Division 10 maintains four portable chairs total for the inmates housed in that division. [73] (Ex. 1) at 35:12-14. The chair has small wheels, handles, and netting on its back. [73] (Ex. 2). Plaintiff testified that the portable chair had a

---

[1] Plaintiff's Amended Complaint, [6], brings allegations based upon ramps at the Leighton Courthouse. *See, e.g., id.* ¶¶ 27−36. At the parties' motion hearing, Plaintiff conceded that the ramp allegations remain irrelevant for purposes of his motion for class certification.

2

sign directing users: "Do Not Use Without Assistance." [66] (Ex. 1) at 80:21−81:9. According to Plaintiff, no staff member ever assisted him in using it. *Id.*

From March 29, 2018 until April 5, 2018, Defendants assigned Plaintiff to Tier 4 within Division 10. [27] (Ex. 6). Plaintiff testified that Defendants did not make the portable chair available on Tier 4. [66] (Ex. 1) at 82:11–83:23. Following his reassignment to Tier 2 on April 5, 2018, Plaintiff first showered using the following method:

> I would go ask the officer was the chair there. If the chair wasn't there, I'll ask him can he go get the chair for me. He will slide the chair into the dayroom. I will put my crutches on the wall and grab hold of the chair and scoot on it as if it was a skateboard or a scooter into the shower area. I would then turn around and sit on it, wash up what I could, stand up, hold on to it, finish washing up, rinse off, and repeat the process in reverse to get the chair back to the officer.

*Id.* at 16:20−17:7. According to Plaintiff, sometimes when he requested the chair, it would already be in use in another wing, and therefore he waited until it became available. *Id.* at 81:20−82:10.

With respect to Division 10's toilet facilities, Plaintiff testified that neither his various cells in Division 10, nor the "dayroom" bathroom, contained grab bars. *Id.* at 15:8−16:6. Evidence presented by Plaintiff suggests that at times, CCDOC used the portable chair as a toilet chair, in addition to a shower chair, to accommodate disabled inmates. *See, e.g.*, [73] (Ex. 2). According to Plaintiff, when using the bathroom in Division 10, he used the following processes:

> I usually use my crutches to lower myself. And use the wall and my crutches to – or whatever is closest to the toilet depending on which toilet I'm at to raise myself. And if I'm out in the dayroom, I will have

3

to use the wall or the toilet next to me to raise myself. But I use my
crutches to lower myself.

[66] (Ex. 1) at 15:24−16:6.

On June 16, 2018, Plaintiff fell and injured himself while using the chair. [27] (Ex. 7) at 4; [73] (Ex. 7). He submitted a grievance and received medical treatment in the following days. *Id.* In addition to Plaintiff's complaints, Plaintiff submitted numerous grievances from other Division 10 detainees who complained of inadequate shower and toilet facilities, such as the lack of grab bars, slippery floors, and the problems obtaining and using the portable chair. [74] at 16−33.

## II. Legal Standard

Federal Rule of Civil Procedure 23 governs class action suits. Courts must complete a two-step analysis when determining whether to grant a motion for class certification. First, plaintiffs must satisfy Rule 23(a)'s four requirements:

> (1) the class is so numerous that joinder of all members is impracticable (numerosity);
> (2) there are questions of law or fact common to the class (commonality);
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and
> (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

*Lacy v. Cook Cty.*, 897 F.3d 847, 864 (7th Cir. 2018) (quoting Fed. R. Civ. P. 23(a)).

Second, plaintiffs must also satisfy one of Rule 23(b)'s conditions. *Id.* Here, Plaintiff seeks certification under Rule 23(b)(3), which requires both that common questions predominate and that proceeding as a class remains superior to other ways of adjudicating the case. *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017). Additionally, the Seventh Circuit instructs that a class "must be

4

sufficiently definite that its members are ascertainable." *Lacy*, 897 F.3d at 864 (citing *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012)). Plaintiff bears the burden of proving, by a preponderance of the evidence, that certification should be granted. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015).

**III.    Analysis**

A district court may only certify a class if the plaintiff satisfies all four requirements under Rule 23(a). *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 800 (7th Cir. 2017). As relevant here, Rule 23(a)(2) requires the presence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A question meets this requirement if it "generates a common answer, such that determination of the question will 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Balderrama-Baca v. Clarence Davids & Co.*, 318 F.R.D. 603, 610 (N.D. Ill. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In sum, "the class members' claims must depend on a common contention that is 'capable of classwide resolution.'" *McCaster*, 845 F.3d at 800 (quoting *Wal-Mart*, 564 U.S. at 350). The currently defined class falls short of this requirement.

Plaintiff advances two alternative legal theories. One theory assumes that the ADA and Rehab Act's Structural Standards do not apply, in which case the lawfulness of Defendants' actions turns upon whether Defendants afforded the class reasonable accommodations. Alternatively, Plaintiff argues that Division 10 must comply with the ADA and Rehab Act's Structural Standards, which require that Division 10

5

provide a grab bar for each accessible shower and toilet. This Court cannot, at least on the current record before it, find commonality.

Plaintiff's reasonable accommodation theory frustrates the commonality requirement. He currently defines the class to include individuals prescribed any of three different types of aid: a cane, crutch, or walker. Because he broadly defines the class, the nature and severity of the class members' disability and ability to ambulate varies. *Compare* [6] ¶¶ 6–9 (detailing Plaintiff's difficulty ambulating because his right leg is amputated) *with* [99] at 9 (citing testimony of one putative class member with a knee injury who can stand pain-free if he receives shots); [74] at 18 (detailing the nature of the class members' disabilities as ranging from an amputated leg to a serious back injury). Class dissimilarities frequently impede the Court's ability to generate common answers. *Wal-Mart*, 564 U.S. at 350; *see also Parko v. Shell Oil Co.*, 739 F.3d 1083, 1860 (7th Cir. 2014) (noting that factual dissimilarities among the class members such as likely "variance in property values" reflected the fact that common issues did not dominate).

Indeed, in this case, given the dissimilarities among the class members, Defendants' accommodation may or may not have been reasonable for any individual class member depending upon the nature and severity of that class member's disability. Thus, in order to determine the legality of Defendants' conduct, this Court would need to engage in a fact-specific inquiry for each individual. In doing so, this case would devolve into an amalgamation of various individual ADA claims, any of which may or may have merit. *McCaster*, 845 F.3d at 801. For this reason, Plaintiff

has not demonstrated that the class' reasonable accommodation theory satisfies the commonality requirement. *Wal-Mart*, 564 U.S. at 350.

Plaintiff's proposed class also remains distinguishable from the proposed class in *Lacy*, where the plaintiffs advanced similar alternative legal theories. In that case, though, the class members shared a common physical impairment: "confine[ment] to wheelchairs." *Lacy*, 897 F.3d at 865. Although differences likely existed as to the nature and severity of the *Lacy* class member's individual disabilities, the class was sufficiently homogenous, particularly as it related to the class members' ability to ambulate, so as not create the factual issues present here. *See, e.g.*, [74] at 18 (detailing the nature of the class members' disabilities as ranging from an amputated leg to a serious back injury). In fact, the court in *Lacy* observed that the reasonableness of an accommodation is a fact-specific inquiry that "may preclude class certification in some cases, for instance if the plaintiffs [] had alleged a variety of disabilities." 897 F.3d at 865. As currently defined, Plaintiff's class encompasses a variety of disabilities, hindering this Court's ability to determine whether Defendants' conduct was unlawful on a classwide basis. For this reason, Plaintiff fails to satisfy Rule 23(a)'s commonality requirement as it relates to his reasonable accommodation theory.

Plaintiff's alternative theory similarly cannot serve as the basis for finding commonality. This theory posits that Division 10 must comply with the ADA and Rehab Act's Structural Standards, which require a shower and accessible toilet to have at least one grab bar nearby. [27] at 7. If viable, this theory might ostensibly

7

satisfy Rule 23(a)(2)'s commonality requirement because the class claims do not require this Court to engage in any individualized determinations as to what constitutes a reasonable accommodation. *Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576, at *4 (N.D. Ill. April 30, 2015) (finding commonality based upon the "threshold question" of whether six courthouses had to comply with the ADA and Rehab Act's structural requirements including providing accessible bathrooms with nearby grab bars). But for this Court to determine whether the ADA and Rehab Act's Structural Standards control—thereby mooting the reasonable accommodation inquiry—it would need to rule on the merits of Plaintiff's case. Yet doing so prior to ruling on class certification runs afoul of the rule against one-way intervention. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016). Thus, this Court cannot find commonality on the record before it.

Finally, although this Court maintains authority to modify the class definition, *Lacy*, 2015 WL 1995576, at *7 n.5, it declines to do so in this instance. Although a more limited class definition might cure Plaintiff's commonality problem, he has not presented evidence showing whether a revised class definition would satisfy the ascertainability and numerosity requirements.[2]

Accordingly, this Court must deny Plaintiff's motion for class certification.

---

[2] The Court cannot properly evaluate the remaining Rule 23 requirements based upon the information currently in the record.

## IV. Conclusion

For the reasons explained above, Plaintiff's motion for class certification [27] is denied without prejudice. All dates and deadlines stand.

Dated: September 23, 2019

Entered:

John Robert Blakey
United States District Judge

9