**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PRESTON BENNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| -vs- | ) | No. 18-cv-4268 |
| | ) | |
| **THOMAS DART, SHERIFF OF COOK COUNTY (in his official capacity), AND COOK COUNTY, ILLINOIS,** | ) ) ) ) | Honorable Judge John Robert Blakey |
| **Defendants.** | ) ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

NOW COMES Defendants Thomas Dart, Sheriff of Cook County and Cook County (collectively "Defendants"), by and through their attorney Kimberly M. Foxx, State's Attorney of Cook County, through her Special Assistant State's Attorneys Johnson & Bell, Ltd., and move this Honorable Court for summary judgment on Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.

**Introduction**

Plaintiff Preston Bennett ("Plaintiff") was an inmate in the Cook County Department of Corrections ("Cook County Jail") from March 29, 2018 to July 23, 2018. [Statement of Material Facts, ¶1]. Plaintiff filed his Complaint on June 20, 2018 and his Amended Complaint on June 27, 2018. [Statement of Material Facts, ¶2]. In the Amended Complaint, Plaintiff alleges that Defendants violated his rights under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") because Division 10, Tier 2B of Cook County Jail, where he was

1

primarily housed, did not have grab bars or fixed benches in the communal shower area, and Division 10 did it have grab bars near the cell toilets.[1] [Statement of Material Facts, ¶3]. Plaintiff also alleges Defendants violated the ADA and RA by failing to implement a policy requiring officers to push non-wheelchair users up the ramp at the Leighton Criminal Courthouse ("Leighton ramp") in a wheelchair. [Statement of Material Facts, ¶4].

## Legal Standard

Summary judgment is "proper where there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact." *Long Grove Investments, LLC v. Baldi Candy Co.*, 397 F. Supp. 3d 1190, 1194 (N.D. Ill. 2019). (internal citations omitted).

The court construes facts and reasonable inferences in the light most favorable to the non-moving party. *Long Grove Investments, LLC v. Baldi Candy Co.*, No. 18-cv-5237, 2019 U.S. 397 F. Supp. 3d at 1194-95. In response, the non-moving party "must do more than simply show that

---

[1] The ADA and RA are "coextensive" statutes, and courts apply them in a consistent manner and apply precedent under one statute in cases involving the other. *See A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) ("The relevant provisions and implementing regulations of the Rehabilitation Act and the ADA are 'materially identical.' As a result, 'courts construe and apply them in a consistent manner,' and our evaluation of A.H.'s claims under both require the same analysis.") (internal citations omitted); *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 852 (7th Cir. 2018) ("The plaintiffs also filed suit under section 504 of the Rehabilitation Act. Because Title II was modeled after section 504, 'the elements of claims under the two provisions are nearly identical.' Therefore, absent circumstances not present here, we apply precedent under one statute to cases involving the other.") (internal citations omitted); *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1065 (N.D. Ill. 2016) ("Both Clemons and the Sheriff seek summary judgment on Clemons' ADA and Rehabilitation Act claims... Because it is undisputed that the Cook County Sheriff received federal funds during the time that Clemons was housed at the Cermak facility, PSOF ¶ 6, and the statutes are otherwise coextensive, this opinion will refer only to the ADA going forward.")

there is some metaphysical doubt as to the material facts. Thus, a mere scintilla of evidence supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party." *Long Grove Investments, LLC*, at 1195. (internal citations omitted).

## Argument

No reasonable jury could find for Plaintiff on any of his claims. First, despite Plaintiff's admission that he filed "a lot of grievances," there is no material dispute of fact that, in contravention of the requirements of the Prison Litigation Reform Act ("PLRA"), Plaintiff failed to exhaust his administrative remedies in Division 10 by filing any grievances regarding:

a) Lack of a fixed bench in the shower area;
b) Lack of grab bars in the shower area;
c) An inability to shower or difficulty using the shower;
d) An inability to use a non-broken shower chair;
e) A denial of the shower chair by Cook County Jail employees;
f) A request for an accommodation other than the shower chair for showering;
g) Lack of grab bars by his cell toilet;
h) Difficulty toileting;
i) A denial of an accommodation for toileting;
j) Difficulty navigating the Leighton ramp or lack of assistance on the Leighton ramp; and,
k) A denial of a wheelchair or any other accommodation on the Leighton ramp.

[Statement of Material Facts, ¶¶43, 46-47, 52, 62].

"When public entities offer services at inaccessible facilities built before 1992, it is clear that they can comply with Title II by making reasonable modifications to their policies, practices, or procedures." *Lacy v. Cook County*, 897 F.3d 847, 853-54 (7th Cir. 2018). "The obligation to make 'reasonable modifications' parallels the obligations to make 'reasonable accommodations' in the context of Titles I and III." *Lacy v. Cook County*, 897 F.3d at 853. Though Title II and

3

Section 504 of the Rehabilitation Act lack "specific reasonable accommodation language, their corresponding regulations employ language indicating that entities must provide reasonable accommodations to the disabled. See 28 C.F.R. § 35.130(b)(7)(i); 28 C.F.R. § 41.53. Moreover, the Supreme Court has recognized a duty to provide reasonable accommodations in Section 504 of the Rehabilitation Act." *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018).

> If physical construction or alterations commence:
>
>> after July 26, 1992, but prior to September 15, 2010, then new construction and alterations subject to this section must comply with either UFAS or the 1991 Standards except that the elevator exemption contained at section 4.1.3(5) and section 4.1.6(1)(k) of the 1991 Standards shall not apply. Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.

28 C.F.R. § 35.151(c)(1). *See also Bowers v. Dart*, No. 16 CV 2483, 2017 WL 4339799, at *5 (N.D. Ill. Sept. 29, 2017) (For facilities "built or altered after July 26, 1992, but before September 15, 2010, the regulations require compliance with specific architectural accessibility standards as outlined in the Uniform Federal Accessibility Standards or the 1991 ADA Standards for Accessible Design.") "In identifying the scope of the equivalent access provision, the drafters of the ADA indicated that 'nothing in these requirements prevents the use of ***designs, products, or technologies*** as alternatives to those prescribed, provided they result in substantially equivalent or greater accessibility and usability.'" *Clemons v. Dart*, 168 F. Supp. 3d 1060, 1067 (N.D. Ill. 2016). (emphasis added by court).

Division 10 of Cook County Jail was under construction before July 26, 1992. [Statement of Material Facts, ¶¶12-16]. The Leighton Criminal Courthouse was "built before 1992 and thus [is] not subject to the ADA's structural accessibility standards." *Lacy v. Cook County*, 897 F.3d at

4

854. Plaintiff's Amended Complaint is silent as to the denial of reasonable or substantially equivalent accommodations and merely states that Defendants did not comply with specific requirements of structural accessibility standards. [Statement of Material Facts, ¶¶3-4]. Thus, not only did Plaintiff fail to grieve the issues over which he is now litigating, but because he excluded any alleged denial of a reasonable or substantially equivalent accommodation in his Amended Complaint, his claims are insufficient to allege that Defendants violated any law.

In fact, Plaintiff used the shower chair accommodation for showering, failed to request any assistance or accommodation for toileting, and used his crutches and a wheelchair as an accommodation to navigate the Leighton ramp. [Statement of Material Facts, ¶¶26, 55-56, 60, 63-64]. Defendants are further entitled to summary judgment because they complied with the ADA by offering reasonable or substantially equivalent accommodations for showering, toileting, and navigating the Leighton ramp. Plaintiff has not stated otherwise in his Amended Complaint, in any grievance, nor to any jail official.

Third, Plaintiff cannot meet his burden of proof under the ADA. To prove an ADA violation, Plaintiff must demonstrate that Defendants intentionally discriminated against him because of his disability such that Defendants were deliberately indifferent to his ability to participate in Cook County Jail's services, programs, and activities, a standard which "requires proof of (1) knowledge that a harm to a federally protected right is substantially likely and (2) a failure to act upon that likelihood." *Lacy v. Cook County*, 897 F.3d 847, 857 (7th Cir. 2018). Defendants were anything but deliberately indifferent to Plaintiff's disability, as they met his accommodation requests and even accommodated him upon sight, without him requesting an accommodation. [Statement of Material Facts, ¶30]. Despite filing "a lot of grievances," Plaintiff never filed a grievance for any of the claims in his Amended Complaint and never spoke to jail

officers regarding assistance with the matters in this suit. [Statement of Material Facts, ¶¶36-64]. Defendants thus lacked knowledge that a harm to Plaintiff's rights was substantially likely.

## I. PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES FOR EACH CLAIM DISPOSES OF HIS SUIT UNDER THE PLRA.

Under the PLRA, a prisoner cannot bring a lawsuit "with respect to prison conditions under any federal law until after exhausting available administrative remedies. Pretrial detainees are considered prisoners for purposes of the Prison Litigation Reform Act because they are in custody while accused of violations of criminal law. When contested, exhaustion is a threshold issue." *Lewis v. Dart*, No. 17 C 4181, 2018 WL 3630158, at *3 (N.D. Ill. July 31, 2018). (internal citations omitted). Failure to exhaust administrative remedies is an affirmative defense. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). Congress specifically strengthened the exhaustion requirement of § 1997e of the PLRA "by making exhaustion mandatory rather than discretionary… Congress intended to create a comprehensive exhaustion requirement for all federal claims." *Smith v. Zachary*, 255 F.3d 446, 451 (7th Cir. 2001). Plaintiff is required by law to comply with "the specific procedures and deadlines established by the prison's policy." *Lewis v. Dart*, No. 17 C 4181, 2018 WL 3630158, at *3.

To exhaust their administrative remedies, detainees in Cook County Jail must avail themselves of the Jail's grievance process, in which a detainee files a formal grievance, a Jail official responds to the grievance, and the detainee appeals within fifteen calendar days of the date a response was received. [Statement of Material Facts, ¶36]. To constitute exhaustion, grievances must be specific enough to notify jail officials as to what is being requested:

> To be sure, Lewis wrote on the grievance form that it is 'difficult for me to go up and down the ramp in my condition,' but the statement appears only in support of the request for a wheelchair. He could have grieved the lack of assistance as an alternative to a wheelchair, but he did not. **Indeed, a Jail official reading the grievance would not know whether Lewis had asked officers or staff for help**

6

> **walking up and down the ramps; for all the official would know from the grievance, maybe Lewis was getting that sort of help.** And, by this time, Lewis also had the benefit of attorney assistance (he was already in contact with his lawyers) when he filed the wheelchair grievance, DSOF ¶ 16, so this is not a nitpick about a purely pro se authored form. Lewis failed to grieve the claim premised on a lack of help on the ramps when he used crutches.

*Lewis v. Dart*, at *10-11. (emphasis added).

### A. Plaintiff failed to exhaust his administrative remedies regarding showering.

Plaintiff alleges he was "deprived the ability to shower on the same basis as non-disabled inmates because defendants do not provide him a fixed bench and grab bars in the shower area." [Dkt. #6, ¶ 19]. But despite his familiarity of Cook County Jail's grievance process and his admission that he "filed a lot of grievances," Plaintiff never filed a grievance in Division 10 regarding a lack of a fixed bench or grab bars in the shower area, an inability to shower or difficulty using the shower, an inability to use a non-broken shower chair, a denial of the shower chair, a request for an accommodation other than the shower chair for showering, or a denial of any other accommodation for showering. [Statement of Material Facts, ¶¶37-54]. Plaintiff even stated "I never filed grievances about showering, period." [Statement of Material Facts, ¶47]. Though Plaintiff did not file grievances about showering accommodations, one of the bases of his suit, he did file a grievance about expired toothpaste. [Statement of Material Facts, ¶40].

When Plaintiff did file grievances about his disability and housing, he only grieved about "housing" in general, which, according to Plaintiff's proposed expert, would not allow a jail official reviewing his grievance to know specifically what Plaintiff grieved about. [Statement of Material Facts, ¶53]. For instance, Plaintiff filed a grievance stating "I have a disability. I am not being housed correctly according to ADA standards for the type of disability I have." [Statement of Material Facts, ¶54]. In *Lewis v. Dart*, Judge Chang granted summary judgment for Defendants on an even less vague grievance, ruling that the plaintiff's grievance was insufficient to notify jail

7

staff for assistance when he stated it was "difficult for me to go up and down the ramp in my condition." *Lewis*, at *10. In the instant case, Plaintiff's aforementioned grievance is clearly also insufficient. Not only does Plaintiff's grievance fail to make any request, it does not even state what he found difficult.

## B. Plaintiff failed to exhaust his administrative remedies regarding toileting.

Plaintiff claims he "is deprived the ability to toilet on the same basis as non-disabled inmates because he does not have grab bars near his cell toilet." [Dkt. #6, ¶ 22]. But Plaintiff never filed a grievance in Division 10 regarding a lack of grab bars by his cell toilet, difficulty toileting, nor denial of an accommodation for toileting. [Statement of Material Facts, ¶¶43, 51-56]. Plaintiff cannot recall speaking to any Division 10 officer about toileting. [Statement of Material Facts, ¶55]. Summary judgment is proper on Plaintiff's toileting claim.

## C. Plaintiff failed to exhaust his administrative remedies regarding the Leighton ramp.

Plaintiff further claims "Defendants never implemented any policy to provide an accommodation to inmates with a substantial difficulty moving from place to place – not prescribed a wheelchair by the CCDOC medical staff – to move up and down the Leighton ramps." [Dkt. #6, ¶ 33]. Plaintiff never filed a grievance related to a lack of accommodation or assistance on the Leighton ramp. [Statement of Material Facts, ¶62].

Moreover, Judge Chang of the United States District Court for the Northern District of Illinois has already granted summary judgment on the same claim in favor of Defendants, ruling Plaintiff's claim for the absence of a policy is nonsensical:

> Lewis argues that the Jail's grievance procedure barred him from filing a grievance on getting help on the ramps when using his crutches. Lewis gets to that conclusion by pointing to a statement on the grievance form, specifically: the "formulation of departmental policies" is a "non-grievable matter." DSOF Exh. 5, Grievance; Pl. Resp. at 2, 4; PSOF ¶ 7. To Lewis's way of thinking, there was an "absence of a policy" for helping detainees with crutches, so asking

8

> for that sort of help would involve the "formulation" of a policy, which is non-grievable. R. 44, Pl. Resp. at 2.
>
> But that is just wordplay. **To get help for himself, Lewis did not have to ask the Sheriff to "formulate" a "policy" on helping detainees with crutches. He could just ask for help for himself. Sure, the Sheriff had not adopted a "policy" on that type of assistance, but "formulation of departmental policies" is not so expansive as to include any policy's absence. If it did, then a detainee could wordsmith any failure to provide a service (or even any particular thing) as the "absence of a policy" to provide that service or thing—and thus be exempt from exhaustion.** That interpretation of the exhaustion requirement also would undermine its twin goals, namely, to "reduce the quantity" and "improve the quality" of prisoner suits.

*Lewis,* at *11-12. (emphasis added). Summary judgment is thus proper on this claim.

## II. PLAINTIFF UTILIZED REASONABLE ACCOMMODATIONS.

### A. The ADA provides that Defendants may offer a reasonable accommodation.

The ADA allows for Defendants to offer Plaintiff a reasonable accommodation, a fact which Plaintiff omits from his Complaint. Plaintiff alleges Defendants violated the ADA simply because they do not have grab bars or a fixed bench in the shower area in Division 10, Tier 2B, grab bars by the toilet in Division 10, nor a policy requiring officers to push non-wheelchair users up the Leighton ramp in a wheelchair. [Statement of Material Facts, ¶¶3-4]. Division 10 was under construction in 1991 and opened in December 1992. [Statement of Material Facts, ¶¶14-16]. Even if Division 10 was built in 1992, given that the size and intricacy of the building, construction could not have commenced after July 26, 1992. [Statement of Material Facts, ¶16]. "When public entities offer services at inaccessible facilities built before 1992, it is clear that they can comply with Title II by making reasonable modifications to their policies, practices, or procedures." *Lacy v. Cook County*, at 853-54. If physical construction or alterations commence:

> after July 26, 1992, but prior to September 15, 2010, then new construction and alterations subject to this section must comply with either UFAS or the 1991 Standards except that the elevator

9

> exemption contained at section 4.1.3(5) and section 4.1.6(1)(k) of the 1991 Standards shall not apply. Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.

28 C.F.R. § 35.151(c)(1). The Leighton Criminal Courthouse was also "built before 1992 and thus [is] not subject to the ADA's structural accessibility standards." *Lacy*, at 854.

Although Plaintiff's Amended Complaint is silent about the denial of a reasonable accommodation or the provision of equivalent access, Defendants clearly do not violate the ADA if they offer such accommodations for buildings in which construction commenced before July 26, 1992. But even if construction commenced after 1992:

> The applicable regulation for determining whether the defendants have satisfied the 'reasonable measures' requirement is 28 C.F.R. § 35.151(c)(1)… even if a facility constructed after 1992 fails to comply with those structural requirements, its shortcomings do not violate the ADA if the facility can clearly establish that equal access was provided notwithstanding its noncompliance with federal structural requirements.

*Clemons v. Dart*, 168 F. Supp. 3d 1060, 1066 (N.D. Ill. 2016). Because Defendants were not required under the ADA to provide a fixed bench or grab bars in the shower area or cells, no reasonable jury could find that Defendants violated the ADA simply by not providing them, which is all that Plaintiff alleges in his Amended Complaint.

**B. The shower chair was a reasonable accommodation for Plaintiff and/or provided substantially equivalent access for showering.**

The shower chair that Plaintiff used in Division 10 was a reasonable accommodation for showering. Plaintiff was in Cook County Jail for approximately four months, independently used the shower chair, was never denied the shower chair, never requested assistance when showering, admittedly filed "a lot of grievances," and "never filed grievances about showering, period." [Statement of Material Facts, ¶¶1, 27-28, 38, 47, 50].

This case is thus unlike *Clemons v. Dart*, in which the Court held a makeshift shower chair was insufficient for a double amputee inmate confined to a wheelchair who relied on nursing assistance to use the chair. *Clemons v. Dart*, 168 F. Supp. 3d at 1062, 1069. In stark contrast to the physical abilities of the plaintiff in *Clemons*, Plaintiff can walk, drove for Uber shortly before his incarceration, and even preferred to drive without a prosthesis. [Statement of Material Facts, ¶¶8, 11]. Unlike the plaintiff in *Clemons*, Plaintiff did not use a "makeshift" shower chair, and only complained about the shower chair when it was allegedly broken. [Statement of Material Facts, ¶¶43-47]. Plaintiff used the shower chair independently and never requested assistance in the shower area. [Statement of Material Facts, ¶¶28, 50].

Moreover, even if construction on Division 10 began after July 26, 1992, courts view the ability of wheelchair users to make independent transfer to accommodations that depart from ADA standards as sufficient under the "equivalent facilitation" provision of the ADA:

> The key fact is that Kohler admitted he could perform a parallel transfer onto the bench in Flava's store. *See Kohler*, 826 F.Supp.2d at 1230 (citing Kohler's deposition). The guidelines only require that a person "using a wheelchair" be able "to make a parallel transfer onto the bench." 28 C.F.R. Pt. 36, App. A § 4.35.4. Given Kohler's ability to do so, the bench at Flava "provide[s] substantially equivalent or greater access" to him. *Id*. Pt. 36, App. A, § 2.2. Accordingly, it qualifies as an equivalent facilitation… Kohler's argument then must be that if the bench is an "equivalent facilitation" under the 1991 standards, it is noncompliant, and as a result, it is required to comply with the 2010 standards. But Kohler has not cited any authority which indicates that an "equivalent facilitation" is non-compliant. By definition, an equivalent facilitation provides "equal or greater access" to disabled patrons— it cannot provide less access. 28 C.F.R. Pt. 36, App. A § 2.2. To say that such a facilitation is non-compliant would undermine Congress's objective in including the "equivalent facilitation" provision in the ADA. We thus hold that a longer bench that permits patrons to complete a parallel transfer is an equivalent facilitation under the 1991 ADAAG.

*Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019–20 (9th Cir. 2015). (affirmed in *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1070 (9th Cir. 2015)). If the ADA permits wheelchair users to independently transfer to accommodations that depart from the ADA design standards, then *a fortiori* the ADA also permits non-wheelchair users to independently use such accommodations.

### C. Plaintiff never requested an accommodation for toileting.

Although the shower chair is available for toileting as well, Plaintiff did not use the chair for toileting, did not request assistance toileting, did not filed grievances about toileting, and testified that he toileted as he normally did prior to his incarceration when not at home or his girlfriend's home. [Statement of Material Facts, ¶¶24, 26, 51-52, 55-56]. Defendants are thus entitled to summary judgment on Plaintiff's toileting claim.

### D. Plaintiff used his crutches and a wheelchair to navigate the Leighton ramp.

Plaintiff claims Defendants violated the ADA by failing to implement a policy requiring officers to push non-wheelchair users up the Leighton ramp in a wheelchair. [Statement of Material Facts, ¶4]. But the ADA does not require such a policy. *Lewis,* at *11-12. Further, Plaintiff successfully navigated the Leighton ramp with two different accommodations: crutches and a wheelchair. [Statement of Material Facts, ¶¶60, 64]. Courts in this District view assistive devices such as canes or crutches as a reasonable accommodation for the Leighton ramp when detainees are able to use them to navigate the Leighton ramp. Ex. 14, Transcript of June 13, 2019 Transcript of Order on Plaintiff's Motions for Injunctive Relief and Class Certification in *Hayes v. Dart* 18-cv-4657, 8:1-5. During Plaintiff's incarceration in Cook County Jail, there was a sign posted on the wall next to the Leighton ramp, stating "If you need assistance to go up or down the ramp, please request help." [Statement of Material Facts, ¶¶58-59]. Although Plaintiff never requested any accommodation for the Leighton ramp, officers asked Plaintiff if they could help him up the Leighton ramp after he was given a long-distance wheelchair accommodation. [Statement of

Material Facts, ¶¶63-64]. Defendants then pushed Plaintiff up the Leighton ramp in the wheelchair. [Statement of Material Facts, ¶64]. Given this, Defendants are entitled to summary judgment on Plaintiff's Leighton ramp claim.

### III. PLAINTIFF CANNOT PROVE DELIBERATE INDIFFERENCE TO HIS RIGHTS UNDER THE ADA.

Public entities such as Defendants must know of an individual's disability and need for an accommodation before they "can be required under the ADA and the Rehabilitation Act to provide any reasonable accommodations. That knowledge either can derive from the individual's request for an accommodation or, in other cases, will be imputed onto the public entity because the individual's need for an accommodation is 'obvious.'" *McKinnie v. Dart*, No. 14 C 9588, 2015 WL 5675425, at *6 (N.D. Ill. Sept. 24, 2015) (internal citations omitted). If Defendants did not know of Plaintiff's need for an accommodation, they could not have been deliberately indifferent to Plaintiff's rights under the ADA, which Plaintiff must prove to succeed in his claims. *Clemons v. Dart*, 168 F. Supp. 3d at 1070. Plaintiff made Defendants aware of his need for an accommodation for showering, and Defendants accommodated him without Plaintiff requesting any further accommodation. Defendants even accommodated Plaintiff up the Leighton ramp by pushing him up in a wheelchair without him asking for such accommodation.

#### A. Plaintiff's housing was determined according to his disability.

Cermak Health Services of Cook County assigns inmates medical classification, which determines where inmates may be housed. [Statement of Material Facts, ¶17]. Plaintiff was assigned M2, or "medical outpatient" classification, meaning he did not require housing in infirmary settings, such as the Cermak Health facility. [Statement of Material Facts, ¶¶19-22]. Inmates with M2 classification can be housed in Division 10. [Statement of Material Facts, ¶21]. Inmates who cannot use a shower chair independently are not housed in Division 10. [Statement

13

of Material Facts, ¶23]. Plaintiff's proposed expert, Sheila Vaughan, determined that Plaintiff could use the shower chair independently. [Statement of Material Facts, ¶28].

### B. Defendants were attentive to Plaintiff's showering needs, and Plaintiff did not inform Defendants of any showering needs not met.

Plaintiff independently used the shower chair during his approximately four-month stay in Division 10 and failed to grieve any inability to use a non-broken shower chair. [Statement of Material Facts, ¶¶1, 26, 28, 46]. Plaintiff was never denied a shower chair. [Statement of Material Facts, ¶27]. Plaintiff believes there was a total of nine or ten times in Division 10, Tier 2B when the shower chair was not immediately available. [Statement of Material Facts, ¶33]. When asked about his wait time for a shower chair, Plaintiff testified that with his "normal" tier officers, it could be as early as three or five minutes, and that as soon as some of the officers saw him, they would say "I'm going to go get the chair for you so you'll be ready to shower," without Plaintiff even having to ask. [Statement of Material Facts, ¶¶30-31]. If the officers were not Plaintiff's normal tier officers and a chair was temporarily unavailable, Plaintiff would have it in ten to twenty minutes. [Statement of Material Facts, ¶32]. When a chair was temporarily unavailable, Plaintiff did not complain about it because, as he testified, "Some things can be resolved through the officers and a little bit of patience." [Statement of Material Facts, ¶34]. Plaintiff never asked for assistance in the shower area. [Statement of Material Facts, ¶50].

Plaintiff's proposed expert testified that neither officers familiar with Plaintiff nor the officers who did not know of the shower chair were indifferent to Plaintiff's rights. [Statement of Material Facts, ¶35]. No reasonable jury could conclude that Defendants were deliberately indifferent to an inmate who used the shower chair independently, who was familiar with the grievance process but never grieved an issue showering when he had a non-broken shower chair,

who was never denied the shower chair, who never asked for assistance showering, and to whom officers were so attentive that they got him the shower chair upon sight.

### C. Plaintiff never requested toileting assistance or further accommodation.

Plaintiff cannot recall ever speaking to officers about toileting while in Division 10. [Statement of Material Facts, ¶55]. Plaintiff never asked for assistance toileting. [Statement of Material Facts, ¶56]. Plaintiff never filed a grievance about toileting. [Statement of Material Facts, ¶52]. And it was not obvious that Plaintiff needed a toileting accommodation as he testified that he toileted in Cook County Jail as he normally toileted prior to his incarceration there. [Statement of Material Facts, ¶51]. Defendants could not have known if Plaintiff required any toileting accommodation and are thus entitled to summary judgment on this claim.

### D. Officers pushed Plaintiff up the Leighton ramp in a wheelchair.

Prior to receiving a long-distance accommodation of a wheelchair to get from Division 10 to the Leighton Criminal Courthouse, Plaintiff was able to use his crutches to navigate the Leighton ramp. [Statement of Material Facts, ¶60]. Despite Plaintiff's claim that Defendants did not have a policy requiring Defendants to push him up the Leighton ramp in a wheelchair, Plaintiff never requested an accommodation for the Leighton ramp, and no officer told Plaintiff he could not receive an accommodation for the Leighton ramp. [Statement of Material Facts, ¶¶61, 63]. Once Plaintiff received a long-distance wheelchair accommodation, officers asked Plaintiff if they could help him up the Leighton ramp, and then they pushed him up the ramp in the wheelchair. [Statement of Material Facts, ¶64]. Plaintiff never filed a grievance related to a lack of accommodation or assistance on the Leighton ramp. [Statement of Material Facts, ¶62]. As stated, Judge Chang has already ruled that Plaintiff's pursuit of a claim for the absence of a policy requiring officers to push him up the Leighton ramp is nonsensical. *Lewis,* at *11-12.

WHEREFORE, Defendants respectfully move this Honorable Court for summary judgment on all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.

        Respectfully submitted,

        KIMBERLY M. FOXX
        State's Attorney of Cook County

        */s/ Zachary A. Pestine*
        Special Assistant State's Attorney

Brian P. Gainer (gainerb@jbltd.com)
Monica Burkoth (burkothm@jbltd.com)
Jack E. Bentley (bentleyj@jbltd.com)
Lisa M. McElroy (mcelroyl@jbltd.com)
Zachary A. Pestine (pestinez@jbltd.com)
Michael R. Sherer (shererm@jbltd.com)
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, IL 60603
Tel: (312) 372-0770
Fax: (312) 372-9818

**CERTIFICATE OF SERVICE**

I, Zachary Pestine, hereby certify that, in accordance with Fed. R. Civ. P. 5 and LR 5.5 and the General Order on Electronic Case Filing (ECF), I served this Notice, together with the documents herein referred, electronically via the ECF-CM system on February 20, 2020.

        */s/ Zachary Pestine*

        Zachary Pestine