UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Preston Bennett,

        Plaintiff,

        v.

Thomas Dart., *et al.*,

        Defendants.

Case No. 18-cv-04268

Judge John Robert Blakey

MEMORANDUM OPINION AND ORDER

Preston Bennett brought suit against Cook County and its sheriff alleging violations of their rights under the Americans with Disabilities Act and the Rehabilitation Act. By prior order [143], this Court certified Bennett's proposed class under Federal Rule of Civil Procedure 23(b)(3), and Defendants have moved for decertification. [149]. For the reasons stated below, this Court grants Defendants' motion and decertifies Plaintiffs' class.

I.    **Background**

This Court presumes familiarity with, and incorporates by reference, its prior opinions, [103]; [119]; [143], as well as the Seventh Circuit's opinion discussing Plaintiff's renewed motion for class certification, *Bennett v. Dart*, 953 F.3d 467 (7th Cir. 2020). This Court thus only briefly revisits the facts pertinent to the pending motion.

Plaintiff alleges that Defendants' failure to provide grab bars in shower and toilet facilities at Division 10 of the Cook County Department of Corrections (Division

1

10), as well as Defendants' failure to provide a fixed bench in Division 10's shower facilities, deprived Plaintiff and other inmates of rights guaranteed under Section 202 of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act. [27]. This Court denied Plaintiff's initial motion for class certification on the grounds that the proposed class lacked commonality and that certification would run afoul of the rule against one-way intervention because, as a prerequisite for certification, this Court would first need to find that the ADA and Rehabilitation Acts' Structural Standards controlled. [103]. Plaintiff then moved to certify a new class defined as: "All inmates assigned to Division 10 at the Cook County Department of Corrections from June 27, 2016 to the date of entry of judgment, prescribed a cane, crutch, or walker by a jail medical provider." [107]. This Court denied Plaintiff's renewed motion on the grounds that certification of the new class would still violate the rule against one-way intervention. [119].

Plaintiff appealed this denial and the Seventh Circuit reversed and remanded. Although the Seventh Circuit determined that Plaintiff's new class definition now avoided "all person-specific questions by contending that Division 10, which was constructed in 1992, violates" the Structural Standards, the Seventh Circuit did not direct this Court to certify the class. *Bennett*, 953 F.3d at 468–69. On remand, this Court initially granted Plaintiff's renewed motion for class certification. [143]. Defendants now move for decertification, however, offering additional evidence concerning the class members.

## II.  Legal Standard

Under Federal Rule of Civil Procedure 23(c)(1)(C), an "order that grants or denies class certification may be altered or amended before final judgment." If class certification is "later deemed to be improvident," the district court also has the option of decertification. *Jacks v. DirectSat USA, LLC*, No. 10-cv-1707, 2015 WL 1087897, at *1 (N.D. Ill. Mar. 10, 2015) (quoting *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 896 (7th Cir. 1981)). On a motion to decertify a class, the party seeking class certification bears "the burden of producing a record demonstrating the continued propriety of maintaining the class action." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003).

While courts remain "free to modify" a certification order or decertify a class in "light of subsequent developments in the litigation," *Brodsky v. HumanaDental Ins. Co.*, 269 F. Supp. 3d 841, 845 (N.D. Ill. 2017) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)), *aff'd*, 910 F.3d 285 (7th Cir. 2018), they "should not condone a series of rearguments on the class issues by the opponent of the class" absent "materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly contingent," *id.* (quoting *Parish v. Sheriff of Cook Cty.*, No. 07 C 4369, 2016 WL 1270400, at *1 (N.D. Ill. Mar. 31, 2016)). Where "new evidence" *is* presented, "Rule 23 clearly requires [courts] to review the propriety of class certification." *Ellis*, 217 F.R.D. at 420.

### III.    Analysis

In their motion to decertify, Defendants argue that: (1) the Structural Standards do not control; and (2) the class fails to satisfy Rule 23(a)'s commonality and typicality requirements and Rule 23(b)(3)'s predominance requirement.   In connection with their motion, Defendants offer new evidence to this Court.   Notably, Defendants provide an updated list of detainees in Division 10 assigned assistive devices, [149-6]; [151], which lays bare each class member's unique circumstances and entitlement to relief under the ADA and Rehabilitation Act.   In light of this new evidence, the record warrants reconsideration of the issue of predominance.

To certify a class under Rule 23(b)(3), a court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members."   Fed. R. Civ. P. 23(b)(3).   This assessment focuses on the "'the legal or factual questions that qualify each class member's case as a genuine controversy,' with the purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"   *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)).   Although the predominance requirement is "similar to Rule 23(a)'s requirements for typicality and commonality," this criterion is "far more demanding."   *Id.* (quoting *Amchem*, 521 U.S. at 623–24).

The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication."   *Id.* (alterations in original) (quoting 7AA Charles Alan Wright

4

& Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011)).  A common question is one for which the "same evidence will suffice for each member to make a prima facie showing."  *Id.* at 815 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).  Conversely, a question is not common when class members must each present varying evidence to make a prima facie showing.  *Id.*  If, after class certification, Defendants show that "individualized . . . inquiries will predominate," then "[d]ecertification, not redefinition, is the appropriate step."  *Johnson v. Yahoo! Inc.*, No. 14 CV 2028, 2018 WL 835339, at *4 (N.D. Ill. Feb. 13, 2018).

This predominance analysis "begins, of course, with the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  Here Plaintiffs allege violations of Section 202 of the ADA, under which "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, under which no "otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a).

When the Structural Standards control and a public entity or recipient of federal funds does not comply with those standards, that noncompliance, if it is to the plaintiff's detriment, may violate a disabled plaintiff's rights under Section 202 of the

5

ADA and Section 504 of the Rehabilitation Act. *See, e.g., Flora v. Dart*, No. 15 C 1127,
2017 WL 2152392, at **3–4 (N.D. Ill. May 17, 2017), *vacated by agreement of the
parties* (Oct. 19, 2017). Compliance with the standards, on the other hand, is
"sufficient to show compliance with the ADA and Rehabilitation Act." *Strominger v.
Brock*, No. 2:10-cv-00158, 2014 WL 268444, at *7 (S.D. Ind. Jan. 23, 2014), *aff'd*, 592
F. App'x 508 (7th Cir. 2014).

Whether the Structural Standards control is undoubtedly a common legal
question because the class members need not present varying evidence to generate a
common answer. But the resolution of this litigation will also turn on two other
critical questions: (1) whether the class members qualify as "disabled" within the
meaning of the ADA and Rehabilitation Act; and (2) whether Defendants violated the
Structural Standards (to the extent they do control) to Plaintiffs' detriment. As this
Court discusses below, neither question can generate common answers.

### 1. Disability Within the Meaning of the ADA and Rehabilitation Act

To succeed on their claims under the ADA and Rehabilitation Act, Plaintiffs
will need to show that they are "disabled" within the meaning of each statute. *See
Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453–54 (7th Cir. 1995); *see also Povey v.
City of Jeffersonville*, 697 F.3d 619, 624 (7th Cir. 2012). Under both the ADA and
Rehabilitation Act, a person is disabled if he has: (1) "a physical or mental
impairment that substantially limits one or more major life activities of such
individual"; (2) "a record of such impairment"; or (3) is "regarded as having such an
impairment." 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B) (incorporating the ADA

definition of disability for purposes of the anti-discrimination provisions of the Rehabilitation Act). The inquiry here is "an individualized one" and must be determined on "a case-by-case basis." *Roth*, 57 F.3d at 1454.

Given Plaintiff's class definition, the question of whether class members have qualifying disabilities cannot generate common answers. Plaintiffs' class comprises all "inmates assigned to Division 10 at the Cook County Department of Corrections . . . prescribed a cane, crutch, or walker by a jail medical provider." [107] at 1. But the fact that an inmate is prescribed such an assistive device does not mean such inmate qualifies as disabled under the ADA and Rehabilitation Act. For example, in *Bowers v. Dart*, the court denied summary judgment on the plaintiff's ADA and Rehabilitation claims because "disputes of fact" existed as to whether the plaintiff was actually disabled. No. 16 CV 2483, 2017 WL 4339799, at *5 (N.D. Ill. Sept. 29, 2017). The court explained that, although prison medical providers prescribed the plaintiff a wheelchair, the evidence also suggested that the plaintiff was malingering and that his doctor only provided him the wheelchair due to his subjective claims of claims of being wheelchair-dependent rather than any medical diagnosis. *See id.*

*Bowers* illustrates the impracticability of determining whether Plaintiffs have qualifying disabilities on a class-wide basis. In support of their motion, Defendants produce new evidence in the form of a list of Division 10 inmates with assistive devices; this list shows that the class comprises over 350 persons prescribed canes, crutches, or walkers, many for "long distance[s] only." [151]. Determining which of these class members have physical impairments that substantially limits one or more

7

major life activities, have a record of such impairment, or are regarded as having such an impairment will require hundreds of individualized assessments.

This case stands in stark contrast to other cases where courts have certified classes of inmates seeking relief under the ADA and Rehabilitation Act. In *Phipps v. Sheriff of Cook County*, for example, the district court certified a class consisting of all "former and current wheelchair bound inmates at the Cook County Department of Corrections who after July 11, 2005 were subjected to discrimination because of their disability in violation of § 202 of the [ADA] and § 504 of the Rehabilitation Act" under Rule 23(b)(3). 249 F.R.D. 298, 300 (N.D. Ill. 2008). Because the class members were all either "paraplegics or partially paralyzed individuals," *id.*, and thus persons undoubtedly disabled within the meaning of the ADA and Rehabilitation Act, individual determinations as to class members' disabilities remained unnecessary. *see, e.g.*, *Ashby v. Warrick Cty. Sch. Corp.*, 908 F.3d 225, 228, 230 n.10, 230–31 (7th Cir. 2018) (noting that appellant "paralyzed from the waist down" had "a disability within the meaning of" Title II of the ADA and Section 504 of the Rehabilitation Act). Ultimately, the district court found "that the predominance requirement of Rule 23(b)(3) [was] met" because there was "no reason to believe that individual questions" would "predominate over the common questions" in the litigation. *Phipps*, 249 F.R.D. at 302.

For their part, Plaintiffs suggest that any disputes about the disability of individual class members can wait until "the damage phase, assuming the plaintiff prevails on liability," [156] at 8, but this puts the cart before the horse. The question

8

of whether class members are disabled is a *prerequisite* to any determination of liability; class members who are not disabled have no rights under the ADA and Rehabilitation Act to begin with. *See Povey*, 697 F.3d at 624; *Peters v. City of Mauston*, 311 F.3d 835, 842–45 (7th Cir. 2002) (affirming dismissal on summary judgment of plaintiff's Rehabilitation Act claims where plaintiff was not disabled).

### 2. Violations of the Structural Standards to Plaintiffs' Detriment

In addition to establishing that class members have qualifying disabilities under the ADA and Rehabilitation Acts and that the Structural Standards apply to Division 10, Plaintiffs must establish that Defendants violated the Structural Standards to their detriment. *Bennett*, 953 F.3d at 469. This is yet another highly individualized inquiry, one incapable of generating common answers.

As Defendants' new evidence reflects, the class here consists of over 350 inmates prescribed different assistive devices, presumably to address different medical needs. [151]. Even if some of those class members *are* ultimately disabled within the meaning of the ADA and Rehabilitation Act, given the varied nature of Plaintiffs' conditions, this Court would need to conduct person-specific evaluations to determine what, if any, injuries these class members suffered due to violations of the Structural Standards. *Cf. Lacy v. Dart*, No. 14 C 6259, 2015 WL 1995576, at **1 & n.4, 3–4, 7 (N.D. Ill. Apr. 30, 2015) (assessing commonality under Rule 23(a) and finding that "no individualized determination is required concerning whether certain plaintiffs are sufficiently accommodated" where members of proposed class alleging

9

violations of the ADA and Rehabilitation Act all used wheelchairs), *aff'd sub nom.*, *Lacy v. Cook Cty.*, 897 F.3d 847 (7th Cir. 2018).

### 3. Predominance

This Court must now decide whether common questions predominate over the individual questions highlighted above. Courts do not assess predominance by simply counting up the number of common and individual questions, *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013), nor by measuring the amount of time it will take to litigate common versus individual questions, 2 William Rubenstein et al., *Newberg on Class Actions* § 4:51 (5th ed. 2020). Instead, this Court must ask "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

In many respects, the class here resembles the class denied certification in *McFields v. Sheriff of Cook County*. There, the plaintiffs alleged that the Cook County Jail's failure "to provide detainees complaining of dental pain with a face-to-face assessment by a registered nurse or higher-level practitioner . . . violates the Fourteenth Amendment" because it was "unreasonable and reflects a deliberate indifference to pain." No. 17 C 7424, 2019 WL 4645443, at *1 (N.D. Ill. Sept. 24, 2019), *aff'd sub nom. McFields v. Dart*, 982 F.3d 511 (7th Cir. 2020), *reh'g and reh'g en banc denied*, (7th Cir. Jan. 22, 2021). The plaintiffs sought to certify a class consisting of all "persons who, while detained at the Cook County Jail between November 1, 2013 and April 30, 2018, submitted a written 'Health Service Request

Form' complaining of dental pain and did not receive a face-to-face assessment by a registered nurse or higher-level practitioner after submitting the request" under Rule 23(b)(3). *Id.* at *2.

Like this case, the *McFields* plaintiffs' class definition presented a common question: whether the Cook County Jail failed to provide face-to-face assessments. *Id.* at *4. But that single common question did not predominate over individual questions because whether the "failure to provide a face-to-face assessment was objectively unreasonable," and thus unconstitutional, "necessarily depend[ed] upon . . . facts and circumstances" specific to each class member. *Id.* at *5. As a result, this Court denied certification, in part because "the proffered common question" did "not appreciably advance resolution of Plaintiffs' claims and . . . individual issues—the facts and circumstances of each individual detainee's claim— predominate[d]." *Id.* at **6–7.

So too here. In this case, the only common question is whether the Structural Standards apply. That question, however, does not predominate over the individual, fact-specific questions of whether class members have qualifying disabilities and whether Defendant violated the Structural Standards, if applicable, in a way that injured each class member. Indeed, determining that the Structural Standards do (or do not) apply will be of no moment to those class members who were never entitled to the protections of the ADA and Rehabilitation Act in the first place. And the identification of class members who fall within the scope of those Acts can take place only through a series of individualized inquiries at trial, not a single, class-wide

11

determination. This alone requires decertification. *Cf. Hoffer v. Inch*, 382 F. Supp. 3d 1288, 1296–98 (N.D. Fla. 2019), *rev'd in part on other grounds sub nom.*, *Hoffer v. Sec'y*, *Fla. Dep't of Corr.*, 973 F.3d 1263 (11th Cir. 2020); (decertifying class of inmates with Hepatitis C as to their ADA and Rehabilitation Act claims where adjudication would require individualized determinations of disability); *Stafford v. Carter*, No. 17-cv-00289, 2018 WL 4361639, at **20–21 (S.D. Ind. Sept. 13, 2013) (decertifying inmate class as to ADA and Rehabilitation claims due to lack of commonality where it was "not clear that all class members" were disabled).

And even after making individual determinations as to each class member's entitlement to protection under the Acts, this Court would be required to undergo another round of individualized, fact-specific assessments as to whether they were injured by Defendant's violations of the Structural Standards, to the extent they apply. In short, the narrow common question of whether the Structural Standards apply has limited value; its resolution does not significantly advance class-wide resolution of this case because this Court must also determine at the outset each individual class member's entitlement to protection under the Acts, as well as whether any violation of the Structural Standards harmed each class member based upon his individual circumstances. For these reasons, individual questions clearly predominate over the common question, requiring decertification under Rule 23(b)(3).

## IV. Conclusion

For the reasons explained above, and in light of the new evidence presented by Defendants, this Court grants Defendants' motion for decertification [149]. The

12

parties are directed to meet and confer concerning next steps to advance the case and

then to file a joint status report on or before October 6, 2022.

IT IS SO ORDERED.

Dated: September 22, 2022                    Entered:

_____

John Robert Blakey
United States District Judge