IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRESTON BENNETT, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) No. 18-cv-4268 |
| v. | ) ) Judge Jeffrey I. Cummings ) |
| THOMAS DART Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are a class of inmates assigned to Division 10 at the Cook County Department of Corrections who were prescribed a cane, crutch, or walker by a jail medical provider. They bring this suit against the Sheriff of Cook County (the "Sheriff") and Cook County, Illinois (the "County") alleging that Division 10 violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12131–34, and Section 504 of the Rehabilitation Act, 29 U.S.C. §794, because it does not have "grab bars" or other fixtures that inmates with physical disabilities may need to safely use Division 10's showers and toilets. Judge Blakey, the judge previously assigned to this case, certified a class consisting of "[a]ll inmates assigned to Division 10 of the Cook County Department of Corrections from June 27, 2016 to the date of the entry of judgment, prescribed a cane, crutch, or walker by a jail medical provider" under Federal Rule 23(c)(4) for a determination of the following issues: (1) whether the Uniform Federal Accessibility Standards ("UFAS") apply to Division 10, and (2) if the UFAS apply, whether defendants violated them. (Dckt. #175).

Plaintiffs have filed a motion for partial summary judgment arguing that they prevail on both class issues. Defendants oppose plaintiffs' motion and have filed a cross-motion for summary judgment arguing that plaintiffs' claims under the ADA and Rehabilitation Act fail on the merits, and that Bennett, the named plaintiff, failed to exhaust his administrative remedies. After the parties' motions were fully briefed, plaintiffs moved to supplement the evidentiary record to include a U.S. Department of Justice publication. Plaintiffs also moved for leave to provide additional authority.

For the reasons that follow, plaintiffs' motion to supplement, (Dckt. #312), is granted, plaintiffs' motion for leave to provide additional authority, (Dckt. #316), is granted, plaintiffs' motion for partial summary judgment, (Dckt. #282), is granted in part and denied in part, and defendants' motion for summary judgment, (Dckt. #291), is denied.

I.  **PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD**

Before reaching the merits of the parties' motions, the Court must resolve an evidentiary issue. Again, after the parties completed their briefing on summary judgment, plaintiffs filed a motion to supplement the record with evidence they argue is relevant to their Rehabilitation Act claim. The evidence includes a publication issued by the U.S. Department of Justice in 1991, which, according to plaintiffs, shows that the County received federal funding in 1988 for the benefit of the Cook County Department of Corrections ("CCDOC"). (Dckt. #312 at 1). This evidence is relevant because liability under the Rehabilitation Act is only triggered where an entity receives federal funds. *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 671–72 (7th Cir. 2012).

Defendants object to the inclusion of this evidence on the grounds that plaintiffs did not move to supplement the record until after the deadlines for discovery and dispositive motions

2

had "long passed." (Dckt. #314 at 1). While plaintiffs did not file their motion to supplement until May 23, 2025—months after the parties completed their briefing on summary judgment—their motion indicates that they learned of the new evidence on May 22, 2025—just one day prior to their filing. Because plaintiffs did not delay in bringing this evidence to the Court's attention, and because defendants do not otherwise point to any prejudice they would suffer by admitting this evidence, the Court, in its discretion, grants plaintiffs' motion to supplement the record. *See, e.g.*, *Tippecanoe Assocs., LLC v. OfficeMax N. Am., Inc.*, No. 1:07-CV-1660-SEB-JMS, 2009 WL 798745, at *4 n.8 (S.D.Ind. Mar. 20, 2009) (granting motion to supplement the record on summary judgment where consideration of the issue would not be prejudicial); *see also Christensen v. Weiss*, 145 F.4th 743, 755 (7th Cir. 2025) (applying abuse of discretion standard to the district court's decision on a motion to supplement the record after the summary judgment deadline).[1]

## II. PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY

After the parties completed their briefing on summary judgment, plaintiffs also filed a motion for leave to file supplemental authority regarding whether Division 10 must comply with the UFAS, including the standard that grab bars must be mounted near the toilets and showers, because defendants received federal funding. The supplemental authority at issue is *Rogers v. Dart*, No. 24-cv-3739, 2025 WL 2239341 (N.D.Ill. Aug. 6, 2025), in which the court granted the plaintiff's motion for a preliminary injunction. Defendants oppose plaintiffs' motion on the grounds that: (1) a ruling on a motion for a preliminary injunction is not authoritative; (2) the issue of federal financial assistance was not contested for purposes of the motion for preliminary

---

[1] Defendants further argue that the supplemental evidence is irrelevant because it supports the fact that Cermak—not CCDOC—received federal financial assistance. This argument is addressed in Section V(B)(2)(i), *infra*.

3

injunction in *Rogers*; and (3) because the federal financial issue was not contested, the district court did not provide any reasoning on the issue for which this Court could find persuasive. The Court concludes that *Rogers*, while not authoritative, is still helpful with respect to the federal funding issue. Because the Court finds the supplemental authority helpful with respect to this point, it grants plaintiffs' motion for leave to file supplemental authority, (Dckt. #316). *See, e.g.*, *Jacobs, Jr. v. Guardian Life Ins. Co. of Am.*, 730 F.Supp.2d 830, 844 (N.D.Ill. 2010) (granting a motion for leave to file supplemental authority because the case was helpful); *People of Ill. Ex rel. Madigan v. Hemi Group, LLC*, No. 08–3050, 2008 WL 4545349, at *3 n.1 (C.D.Ill. Oct. 10, 2008) (same). Although the Court grants plaintiffs' motion, it will take the objections identified in defendants' response into consideration when determining how the decision in *Rogers* impacts the substantive issues currently pending before the Court.

### III.    BACKGROUND

The Court now turns to the parties' cross-motions for summary judgment. The Court draws the factual record from the parties' pleadings; Plaintiffs' Local Rule 56.1(a) Statement of Facts ("PSOF") and accompanying exhibits, (Dckt. #283); Defendants' Response to Plaintiffs' Statement of Facts ("PSOF Resp.") and accompanying exhibit, (Dckt. #290); Defendants' Statement of Additional Facts ("DSAF") and accompanying exhibits, (Dckt. #292); and Plaintiffs' Response to Defendants' Statement of Additional Facts ("DSAF Resp.") and accompanying exhibit, (Dckt. #295). The following facts are undisputed unless otherwise noted.

1. **Construction of Division 10.**

In 1989, the County engaged the services of various architects and contractors to construct Division 10. (PSOF Resp. ¶¶54–56). Despite delays, the construction of Division 10 was completed no later than December 1992. (*Id.* at ¶8; Dckt. 124-2 ¶16).

4

### 2. Plaintiffs' Grievances.

The named plaintiff, Preston Bennett, had his right leg amputated above the knee in 1996 and has intermittently used a prothesis since 1997. (PSOF Resp. ¶¶22–23). Bennett entered CCDOC on March 29, 2018 and was assigned to Division 10. (*Id.* ¶¶20–21). Because he could not wear his prothesis in the shower, Bennett relied on crutches or a walker to access Division 10's showers. (*Id.* at ¶25; *see also* Dckt. #124-1 at 17). To access the toilets in Division 10, Bennett relied on his prosthesis and a cane. (Dckt. #124-1 at 17). Relevant here, during the time that Bennett was assigned to Division 10, Division 10 did not have fixed grab bars in proximity to the toilets in any of the cells or dayrooms, nor fixed mounted seats in the showers for the detainees. (PSOF Resp. ¶¶13, 14). Instead, Division 10 had portable shower chairs, which inmates were permitted to request to aid them when using the showers or toilets. (DSAF Resp. ¶27). Bennett believes there were nine or ten times that a shower chair was not immediately available during his stay in Division 10. (DSAF Resp. ¶40).

On May 3, 2018, the Sheriff's Office received the following grievance from Bennett: "I have a disability. I am not being housed correctly according to ADA standards for the type of disability I have." (PSOF Resp. ¶26). Eight days later, on May 11, 2018, Bennett met with Sabrina Rivero-Canchola ("Rivero-Canchola"), Sheriff Dart's ADA Compliance Officer, regarding his grievance. (*Id.* ¶27). Afterward, Rivero-Canchola responded to Bennett's grievance, reporting that "Bennett stated he has no difficultly eating, showering, toileting, or ambulating on the tier." (*Id.*). Although Bennett testified that he never made these statements to Rivero-Canchola, defendants dispute his testimony on this point. (*Id.* ¶28).[2] Bennett stated only that, "I was never advised of my ADA housing rights" in his appeal of the response to his

---

[2] This factual dispute must be resolved in Bennett's favor for purposes of defendants' summary judgment motion.

grievance. (*Id.* ¶29). Upon review, the inmate services director or their designee indicated that Bennett's appeal would not be accepted. (*Id.* ¶31).

At least four other inmates who were housed in Division 10 during the class period, and who used a cane, crutch, or walker, filed grievances complaining of inadequate shower and toilet access due to the lack of grab bars or handrails. (*Id.* ¶¶33–46). In each instance, these grievances went through the appeals process. (*Id.*).

IV.  **LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment unless it is a genuine dispute as to a material fact); *Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020).

Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up). Where (as here), cross-motions for summary judgment have been filed, courts "construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *Calumet River Fleeting, Inc. v. Int'l Union of Operating Engineers, Local 150, AFL-CIO*, 824 F.3d 645, 647 (7th Cir. 2016) (cleaned up).

## V. DISCUSSION

### A. Defendants are Not Entitled to Summary Judgment on the Affirmative Defense of Failure to Exhaust.

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions without first exhausting all available administrative remedies. 42 U.S.C. §1997e(a); *see Perttu v. Richards*, 605 U.S. 460, 461 (2025). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2008), and *abrogated by Perttu*, 605 U.S. at 468.

Defendants argue they are entitled to summary judgment because Bennett failed to exhaust his administrative remedies before filing this lawsuit. In particular, defendants argue that Bennett's general grievance about "housing" is insufficient to exhaust administrative remedies because it provided defendants no notice of the showering and toileting allegations in his complaint. In response, Bennett argues that his grievance was sufficient to meet the exhaustion requirements of the PLRA. The Court agrees.

The exhaustion requirement gives prisons "a fair opportunity to correct their own errors." *Pyles v. Nwaobasi*, 829 F.3d, 860, 867 (7th Cir. 2016). Thus, exhaustion is satisfied if the

7

grievance "served its function of alerting the state and inviting corrective action." *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

Here, Bennett's grievance alleged, "I have a disability. I am not being housed according to ADA standards for the type of disability I have." (Dckt. #283-10). Defendants contend that because Bennett never specifically mentioned his difficulties using the shower and toilet, they were never on notice of Bennett's needs and therefore cannot have intentionally discriminated against him. This is not the standard contemplated by the ADA. Instead, "Title II of the ADA requires affirmative, proactive accommodations necessary to ensure meaningful access to public services and programs, not accommodation upon request," otherwise "public entities could simply avoid the ADA structural standards in favor of providing an aid or beneficiary, and then avoid affirmative compliance altogether by awaiting requests for individual assistance." *Clemons v. Dart*, No. 13 C 02356, 2016 WL 890697, at *6 (N.D.Ill. Mar. 9, 2016). Consistent with these principles, "[w]hen a disabled individual's need for an accommodation is obvious, the individual's failure to expressly 'request' one is not fatal to the ADA claim." *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1197 (10th Cir. 2007); *see also Crockwell v. Dart*, No. 15 CV 825, 2016 WL 4493456, at *3 (N.D.Ill. Aug. 26, 2016) (citing *Roberston*); *Phipps v. Sheriff of Cook Cnty.*, 681 F.Supp.2d 899, 926 (N.D.Ill. 2009) (same).

Here, defendants had notice of Bennett's disability. Bennett is an amputee who used ambulatory aids to get to the shower and toilet. Bennett's use of these ambulatory aids was obvious to defendants and his failure to grieve these issues is not fatal to his claims. *See Crockwell*, 2016 WL 4493456, at *3 (plaintiff's failure to file a grievance was not fatal to his

8

claims where his use of a wheelchair was obvious and "he was being supplied with catheters and gloves to urinate and defecate because he did not have the use of his lower body.").[3]

Bennett further argues that even if he did not exhaust his administrative remedies, the class's claims can still survive summary judgment on the theory of "vicarious exhaustion." While the Seventh Circuit has yet to determine whether it will apply "vicarious exhaustion" in the context of prisoner class actions, other courts have adopted the theory, under which the PLRA's exhaustion requirement will be deemed satisfied for the entire class so long as the requirement has been met by at least one class member. *See Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004); *Meisberger v. Donahue*, 245 F.R.D. 627, 629 (S.D.Ind. 2007) (collecting cases). Thus, if any member of the plaintiff class exhausted their available remedies, the entire class can be deemed to have done so. *See Phipps v. Sheriff of Cook Cnty.*, 681 F.Supp.2d 899, 908 (N.D.Ill. 2009) (applying the concept of vicarious liability to deny defendant's motion for summary judgment).

Here, defendants have not argued—let alone put forth evidence—that every member of the class failed to exhaust their administrative remedies. In fact, it is undisputed that at least four of the other class members filed grievances and appeals complaining of hardships using the showers and toilets at Division 10. For this reason, defendants have not shown they are entitled to summary judgment on their affirmative defense of failure to exhaust and their motion for summary judgment on that affirmative defense is denied. *Id.* (denying summary judgment on

---

[3] Defendants cite *Lewis v. Dart*, No. 17 C 4181, 2018 WL 3630158, at *4 (N.D.Ill. July 31, 2018) in support of their argument that Bennett failed to exhaust his administrative remedies. (Dckt. #293 at 9-10). In *Lewis*, the court held that the plaintiff did not exhaust his administrative remedies with respect to his claim that the jail failed to provide him with assistance getting up and down ramps when he used his crutches, because his grievance did not specifically mention that he wanted or needed assistance when performing that task. *Id.* Because *Lewis* did not contemplate whether the plaintiff's disability was obvious, the Court does not find it persuasive here.

affirmative defense of failure to exhaust where defendants failed to show, or even assert, that "none of the class members has exhausted the available administrative remedies.").

**B.     Plaintiffs Are Entitled to Partial Summary Judgment on the Class Issues.**

Again, the Court certified the class under Federal Rule 23(c)(4) as to the following two issues: (1) whether the UFAS apply to Division 10, and (2) if the UFAS apply, whether defendants violated them. (Dckt. #175). Plaintiffs now seek summary judgment on these issues.

The Court begins its analysis with the ADA and the Rehabilitation Act, as those are the statutes under which plaintiffs bring their claims. Under both the ADA and the Rehabilitation Act, a plaintiff must demonstrate: (1) they are a qualified individual with a disability; (2) they were denied the benefits of the services, programs, or activities of a public entity; and (3) the denial was by reason of their disability. *Lacy v. Cook County*, 897 F.3d 847, 853 (7th Cir. 2018). The analysis under the ADA and the Rehabilitation Act is the same, except that the Rehabilitation Act requires receipt of federal funding. *Jaros*, 684 F.3d at 671. Thus, the Court considers both statutes together, referring predominately to the ADA. Furthermore, to recover compensatory damages under either the ADA or Rehabilitation Act, plaintiffs must prove intentional discrimination. *See Love v. Westville Correctional Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996) (cleaned up).

**1.     Qualified Individual with a Disability**.

For purposes of analysis under the ADA, an individual is disabled if he has a "physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. §12102(1), "which include walking, standing, bending, and caring for oneself." *Jaros*, 684 F.3d at 672. Plaintiffs have put forth undisputed evidence that the class members were prescribed a cane, crutch, or walker by a jail medical provider, demonstrating that they were unable to

perform some or all of the listed activities without assistance. Indeed, the class is defined to include only those such inmates. (Dckt. #175).

### 2. Denial of Access.

The ADA and Rehabilitation Act prohibit a public entity, including a correctional facility, from denying individuals with disabilities access to a public entity's programs and services, including its showers and toilets, due to structural barriers. *Jaros*, 684 F.3d at 672 (Although "incarceration is not a program or activity, the meals and showers made available to inmates are."). Specifically, Title II of the ADA requires a public entity to "take reasonable measures to remove architectural and other barriers to accessibility." *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) (citing 42 U.S.C. §12131(2)). "Reasonable measures" include designing a building in "such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities." 28 C.F.R. §35.151(a)(1). A building is "readily accessible" if it complies with the ADA and Rehabilitation Act's accessibility guidelines, compliance with which is required by applicable regulations. *Lane*, 541 U.S. at 532. The appropriate guidelines for a particular building are determined by the building's age. If physical construction began on or after March 7, 1988, "design, construction, and alterations of buildings" must comply with the [UFAS]. 28 C.F.R. §42.522(b).

The Court thus turns to the class issues: (1) whether the UFAS apply to Division 10, and (2) if the UFAS apply, whether defendants violated them. Under the Rehabilitation Act, these issues can be answered in the affirmative only if the party responsible for the construction of Division 10 receives federal financial assistance. *Khan v. Midwestern Univ.*, 879 F.3d 838, 843 (7th Cir. 2018), *as amended on denial of reh'g* (Feb. 26, 2018) (cleaned up). Defendants argue

11

they were not the party responsible for the construction of the correctional facility and therefore, this requirement is not met. The Court addresses their arguments below.

> i. **Plaintiffs Have Demonstrated that the UFAS Apply to the County and the Sheriff Because They Received Federal Funds.**
>
> **(a). The County Received Federal Funds.**

The County begins by arguing that, for purposes of the Rehabilitation Act, it is not enough to show that the County received federal funds; rather, the County contends, in order to trigger liability under the Rehabilitation Act, the federal funds must be received by the specific entity or department within the County responsible for the construction of Division 10—here, the Department of Capital Planning and Policy.

This argument is unavailing. In *Phipps v. Sheriff of Cook Cnty.*, 681 F.Supp.2d 899, 912 (N.D.Ill. 2009), the County argued that the CCDOC did not fall within the Rehabilitation Act's reach because it did not receive federal funds "for programs under the ADA" or for making programs and services "accessible to those qualified under the ADA." *Id*. The *Phipps* court rejected this argument, explaining that "for purposes of the [Rehabilitation Act], the question is whether the program or activity in question receives federal financial assistance, full stop." *Id*. Similarly here, the question is not whether the specific *department* responsible for the construction of Division 10 received federal funds, it is whether the County did, full stop.

Here, the County admits that Cermak Health Services is a department within the County, (DSOF Resp. ¶19), and stipulated that "[f]rom 1989 to 1992, Cermak Health Services received federal assistance for programs, services, and/or activities for detainees" at the CCDOC. (Dckt. #283-2). The record further reflects that the Bureau of Justice Assistance "awarded [a] grant to Cermak Health Services (and Cermak's Department of Psychiatry), within Cook County's Public Health Agency." (Dckt. #312-1 at 35). This is sufficient to demonstrate that that the County

12

receives federal funding.[4] *See, e.g.*, *Bowers v. Dart*, No. 16 CV 2483, 2017 WL 4339799, at *2 n.2, *3 (N.D.Ill. Sept. 29, 2017), *aff'd*, 1 F.4th 513 (7th Cir. 2021) (explaining the "County operates Cermak" and that the County "accepted federal funds for Illinois state prisons."); *Schroeder v. City of Chicago*, 715 F.Supp. 222, 225 (N.D.Ill. 1989), *aff'd*, 927 F.2d 957 (7th Cir. 1991) ("Congress indicated its intent to include federally funded institutions like hospitals or universities within the amended definition of "program or activity" under the Rehabilitation Act).

### (b). The Sheriff Received Federal Funds.

The Sheriff argues that the Sheriff's Office could not have violated the UFAS because it did not construct or oversee construction of Division 10. The Court rejects this argument. Again, to determine whether the Sheriff falls under the Rehabilitation Act's reach, the question is not whether the Sheriff oversaw construction of Division 10, it is whether the Sheriff received federal funds, full stop. *See Clemons v. Dart*, 168 F.Supp.3d 1060, 1065 (N.D.Ill. 2016). The Sheriff stipulated he would not contest this federal financial assistance element required for a claim under the Rehabilitation Act, (Dckt. #283-1), therefore the Court finds that plaintiffs have demonstrated that the Sheriff received federal funding and the UFAS apply to him.

The Court notes that its finding is consistent not only with other opinions in this Circuit, but also with the stipulations made by the defendants in similar matters. *See, e.g.*, *Rogers*, 2025 WL 2239341, *3 (stating that neither the County nor the Sheriff disputed the federal funding requirement of the Rehabilitation Act was met); *Westmoreland v. Dart*, No. 21 C 4330, 2023 WL

---

[4] In support of their argument, defendants cite to *Winfrey v. City of Chicago*, 957 F.Supp. 1014, 1024 (N.D.Ill. 1997). Defendants' reliance on *Winfrey* is unavailing. There, the Court found that the plaintiff's allegation that the City of Chicago received federal financial assistance without identifying a specific department received federal funding was insufficient to state a claim under the Rehabilitation Act. *Id*. Unlike *Winfrey*, which was decided on a motion to dismiss, plaintiffs specifically name Cook County and Cermak, and have put forth evidence on summary judgment that they both received federal funding.

13

4273661, at *7 (N.D.Ill. June 29, 2023) (federal funding element not at issue in case against the Sheriff and the County); *Clemons*, 168 F.Supp.3d at 1065 ("it is undisputed that the Cook County Sheriff received federal funds during the time that Clemons was housed at the Cermak facility . . ."); *Bowers*, 2017 WL 4339799, at *3 ("The relevant entities here, Cook County and the Cook County Sheriff's Office, accepted federal funds for Illinois state prisons."); *Phipps*, 681 F.Supp.2d at 913 (finding the Rehabilitation Act applied to the County and that "[u]nder any natural reading, the Sheriff's Office incontrovertibly falls under [the Rehabilitation Act].").

Accordingly, the Court finds that plaintiffs have established the federal funding requirement of their claim, such that the UFAS apply to both the County and the Sheriff.

### ii. There are Questions of Material Fact as to Whether Defendants Violated the UFAS.

Next, plaintiffs argue that they are entitled to summary judgment on the second of the class issues, that is whether defendants violated the UFAS. The UFAS require an accessible shower to have a mounted shower seat, UFAS §4.213, and grab bars, UFAS §4.213. Likewise, the UFAS require an accessible toilet to have grab bars mounted near the toilet. UFAS §4.17.6. Plaintiffs argue that it is undisputed that the showers in Division 10 do not have grab bars or mounted shower seats. It is further undisputed that there are no grab bars mounted near the toilets. While true, this does not end the inquiry.

"When public entities offer services at inaccessible facilities built before 1992, it is clear that they can comply with Title II by making reasonable modifications to their policies, practices, or procedures." *Lacy*, 897 F.3d at 853–54. A reasonable accommodation does not require a perfect cure for the problem, *see Stewart v. County of Brown*, 86 F.3d 107, 112 (7th Cir. 1996), but in defining a reasonable accommodation in correctional facilities, courts consider the accommodation "in light of the overall institutional requirements." *Love v. Westville Corr. Ctr.*,

14

103 F.3d 558, 561 (7th Cir. 1996). Whether an accommodation is reasonable is a "highly fact-specific" determination and requires a case-by-case analysis. *Dadian v. Village of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001).

Here, there is no dispute that Division 10 had an accommodation for plaintiffs with ambulatory disabilities—the shower chair; instead, plaintiffs contest the adequacy of that accommodation. Viewing the evidence in defendants' favor, as the Court must when considering plaintiffs' motion for summary judgment, defendant has demonstrated that portable shower chairs are available in Division 10 to assist inmates when they are using the showers and toilets. Defendants further point to evidence that, on occasion, officers would procure a shower chair for Bennett "without [him] even having to ask for it," and that there were only nine or ten times a chair was not immediately available during Bennett's stay. (DSAF Resp. ¶¶37, 40). Although plaintiffs attack the adequacy of defendants' alleged accommodation—by arguing that there were a limited number of chairs, the chairs were not always readily available, and the chairs led to in-shower injuries—on these facts, a reasonable jury could find that by providing the portable shower chairs at Division 10, defendants reasonably accommodated plaintiffs and summary judgment is thus improper. *See Phipps*, 681 F.Supp.2d at 922 (denying summary judgment where the plaintiffs, a class of inmates, disputed the defendant's contention that its prison facilities complied with the ADA by providing accommodations to wheelchair bound inmates); *Holmes v. Godinez*, 311 F.R.D. 177, 228 (N.D.Ill. 2015) (denying summary judgment where "critical questions of fact [remained], including whether IDOC has a practice of providing hearing accommodations during disciplinary proceedings and whether any such accommodations are effective.").

For these reasons, the Court finds there is a question of fact as to whether defendants violated the UFAS. Therefore, plaintiffs' motion for summary judgment on the second of the class issues—that is, whether defendants violated the UFAS—is denied.

### 3. Deliberate Indifference.

To recover compensatory damages under the ADA or Rehabilitation Act, a plaintiff must show that the Sheriff acted with deliberate indifference. Deliberate indifference is established "where an official realizes that a substantial risk of serious harm to a prisoner exists, but disregards it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). In ADA cases, like this one, a public official acts with deliberate indifference when he has "knowledge that a harm to a federally protected right is substantially likely" and he fails to "act upon that likelihood." *Clemons*, 168 F.Supp.3d at 1070.

The Sheriff argues that no reasonable jury could find that the Sheriff was deliberately indifferent to Bennett's need for an accommodation because "[p]laintiff has no evidence he alerted jail officials that he could not access the shower or toilet or that he needed some type of accommodation other than the shower chair." (Dckt. #302 at 13).

However, viewing the evidence in Bennett's favor, as the Court must when considering defendants' motion for summary judgment, a reasonable jury could conclude that the Sheriff was on notice of Bennett's need for an accommodation. Bennett points to evidence that at the time he arrived at CCDOC, he was an amputee who could not, at any point, wear his prothesis in the shower or independently ambulate to the toilet. *See Clemons*, 168 F.Supp.3d at 1070 (explaining it was "apparent" an inmate who was confined to a wheelchair was "in need of ADA compliant facilities."). Second, there is evidence that the Sheriff knew that CCDOC did not comply with

certain ADA accessibility requirements[5] *before* Bennett entered the jail in March 2018 based on an email sent by a Sheriff's employee in 2013 to members of the Capital Planning of Cook County department, where she stated that she "met with Cermak . . . to review ADA violations and prioritize them for completion . . ." And Bennett has pointed to evidence that defendants were aware the accommodation that they did ultimately provide—namely, the shower chairs—was insufficient, as the chairs need to be procured by Division 10 personnel and were not always available for inmates to use. (*See* DSAF Resp. ¶¶27, 40). On these facts, when viewed in a light most favorable to Bennett, a reasonable jury could find that the Sheriff acted with deliberate indifference.

Defendants' reliance on *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 595 (7th Cir. 2023) in support of their argument does not warrant a different result. In that case, the Seventh Circuit found that plaintiff's claim for damages failed where there was no evidence supporting a finding of deliberate indifference. *Id*. Specifically, the Court found that plaintiff "never alerted anyone at any prison that he required an accommodation in order to access services" based on an eye-related disability, the plaintiff was "was able to get everywhere he wanted or needed to go in prison," and "he was able to access every service" (i.e., program and activity). *Id.* In contrast here, there *is* evidence on which a reasonable jury could conclude that prison personnel were aware that Bennett required an accommodation based on his status as an amputee and his need of ambulatory aids. There is also evidence Bennett was denied access to services, including the

---

[5] Defendants argue that CCDOC was built before 1992 and thus is not subject to the ADA's structural accessibility standards. (Dckt. #293 at 12); 28 C.F.R. §35.151(c)(1). As stated above, "[w]hen public entities offer services at inaccessible facilities built before 1992, it is clear that they can comply with Title II by making reasonable modifications to their policies, practices, or procedures." *Lacy*, 897 F.3d at 853–54. "Nonetheless, to the extent that the facilities prevent individuals with disabilities from meaningfully accessing public services, reasonable modifications are required." *Lacy*, 897 F.3d at 854; 42 U.S.C. §§35.130(b)(7)(i), 35.150(a).

17

shower when an accommodation—again, a shower chair—was not available. Therefore, defendants' motion for summary judgment on this issue is denied.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to supplement the record, (Dckt. #312), is granted; plaintiffs' motion for leave to supplement with additional authority, (Dckt. #316), is granted; plaintiffs' motion for partial summary judgment, (Dckt. #282), is granted in part and denied in part; and defendants' motion for summary judgment, (Dckt. #291), is denied.

**Date: September 29, 2025**

_____
**Jeffrey I. Cummings
United States District Court Judge**