**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PRESTON BENNETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 18-cv-4268** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **THOMAS DART Sheriff of Cook County,** | ) | |
| **and COOK COUNTY, ILLINOIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On September 29, 2025, this Court issued a Memorandum Opinion and Order (the "Opinion") denying cross-motions for summary judgment filed by plaintiff, Preston Bennett, and defendants, Thomas Dart and Cook County, Illinois. *Bennett v. Dart*, No. 18-CV-4268, 2025 WL 2764518 (N.D.Ill. Sept. 29, 2025) (Dckt. #321). For different reasons, both Bennett and defendants have asked this Court to reconsider the Opinion. (Dckt. ##322, 327). For the reasons set forth below, Bennett's motion for reconsideration is granted and defendants' motion for reconsideration is denied.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) states that a court may reconsider an interlocutory ruling "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed R. Civ. P. 54(b). But court rulings "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill. 1988). Thus, the "purpose of a motion to reconsider is narrow" and courts will only entertain such motions "to correct manifest errors of law or fact or to present newly discovered evidence." *Ellenby Techs., Inc. v. Fireking Sec. Grp.*,

533 F.Supp.3d 656, 659 (N.D.Ill. 2021), *quoting Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). "A manifest error of law or fact under this standard occurs when a district court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Patrick v. City of Chicago*, 103 F.Supp.3d 907, 912 (N.D.Ill. 2015), *quoting Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Parties seeking reconsideration bear "a heavy burden" because such motions are "disfavored." *Patrick*, 103 F.Supp.3d at 911–12.

## II. DISCUSSION[1]

### A. Defendants' Motion for Reconsideration

The Court turns first to defendants' motion, in which they ask this Court to reconsider its finding that the Uniform Federal Accessibility Standards ("UFAS") apply to the County and the Sheriff (the "first issue") and its finding that issues of material fact precluded summary judgment on whether the County and the Sheriff's Office violated the UFAS (the "second issue"). None of defendants' arguments provides sufficient grounds for this Court to reconsider its rulings on these issues.

As a preliminary matter, the Sheriff waived its arguments as to both issues by failing to properly develop them on summary judgment. In their cross-motion for summary judgment, defendants argued that the Rehabilitation Act did not apply because "plaintiff ha[d] no evidence that the department responsible for constructing Division 10 received federal financial assistance, a necessary element for a claim under the Rehabilitation Act." (Dckt. #293 at 2). Defendants

[1] For purposes of this Order, the Court assumes familiarity with the underlying facts of this case and the conclusions reached by the Court in its September 29, 2025 Opinion.

based their entire argument related to the application of the Rehabilitation Act on this element. Now, in their motion to reconsider, defendants suggest—*for the first time*—that their arguments were directed at another element of the Rehabilitation Act—that is, whether the Department of Corrections (which defendants admit is a department within the Sheriff's Office) denied plaintiff access to a "program or activity." (Dckt. #327 at 5); 29 U.S.C. §794 (explaining that no qualified individual shall "be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance"). Yet defendants' arguments on summary judgment regarding "program or activity" tie back to the federal financial assistance element, not the denial element. (*See, e.g.*, Dckt. #293 at 4–5) ("Congress could have defined 'program or activity' to include all the operations of a local government, but it did not. It defined 'program or activity' to include only the operations of the department within the local government that receives *federal financial assistance*.") (emphasis added). As emphasized above, "motions to reconsider [are] not an opportunity to present arguments that could have been raised previously." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). Consequently, the Sheriff's arguments have been waived for purposes of this motion. *See, e.g.*, *Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017) (arguments raised for the first time in a motion to reconsider are waived).

Defendants next argue that their arguments that the Sheriff's Office did not design, construct, or alter Division 10 were directed at not only whether the UFAS applied (the first issue), but also whether the Sheriff's Office violated the UFAS (the second issue). Defendants' position is that because the Sheriff's Office did not construct Division 10, it could not violate the UFAS. But again, the Sheriff's Office did not develop this argument on summary judgment. At best, defendants argued that there was evidence that Cermak (a health services provider) received

federal funds but was not involved in the construction of Division 10, (Dckt. #293 at 3–4), and conversely, that the Department of Capital Planning and Policy oversaw the construction of Division 10. (*Id.* at 6). Although defendants briefly stated—in passing, within a broader argument about federal financial assistance—that the "Sheriff's Office did not construct or oversee construction of Division 10," (*id.* at 6), defendants did not develop this argument. They now belatedly attempt to do so through their motion for reconsideration. Defendants' failure to properly develop and present arguments that they could have previously raised is, again, not a basis for this Court to grant reconsideration. *Cincinnati Life Ins. Co.*, 722 F.3d at 954.

Even if defendants had not waived their arguments concerning the Sheriff's Office, those arguments are unavailing. The UFAS applies to the Sheriff's Office—and the Sheriff's Office *could* have violated the UFAS based on how Division 10 was constructed—even if the Department of Capital Planning and Policy was the entity that "oversaw construction" of Division 10. (Dckt. #330 at 10).[2] This is so because "it would be dishonest to find that responsibility" for Division 10's construction "begins and ends with the Department of Capital Planning and Policy." *Rogers v. Dart*, No. 24-CV-03739, 2026 WL 1584767, at *4 (N.D.Ill. June 3, 2026). As plaintiff correctly points out, (*see* Dckt. #330 at 1–2), under Illinois law, the Sheriff: (1) has custody and control over the Cook County Jail, 55 ILCS 5/3-6017; (2) is responsible for the care and custody of all individuals detained at the Jail, 730 ILCS 125/2; and (3) is legally responsible for ensuring that the jail facilities are "kept and maintained in good and sufficient condition and repair," 730 ILCS 125/1. Furthermore, while defendants argue that "responsibility [for constructing a jail] is placed in the hands of the County," and that "the Department of Capital Planning and Policy . . . managed the construction of Division 10," (Dckt.

---

[2] The Sheriff already stipulated that he would not contest the federal financial assistance element required for a claim under the Rehabilitation Act. (Dckt. #283-1).

#31 at 3,5), "the Department of Capital Planning and Policy *cannot* legally construct a new housing unit at the Jail without authorization from" *both* Cook County and the Sheriff's Office. *Rogers*, 2026 WL 1584767, at *4 (emphasis added). As such, it would "strain[] credulity" to find that the UFAS does not apply to the Sheriff's Office, or that the Sheriff could not violate the UFAS, solely because another department was involved in the Jail's design or construction. *Id.* Defendants fail to cite legal authority showing otherwise. (*See* Dckt. #31 at 2–6)

Defendants also urge the Court to reconsider its finding that Cook County can be held liable for plaintiff's claims under the Rehabilitation Act. This rehashes an argument in their cross-motion for summary judgment, where defendants asserted that "the fact that Cermak received federal financial assistance is insufficient to hold Cook County liable for the claims Plaintiff alleges in this particular case," (Dckt. #293 at 3), and more broadly that "[p]laintiff d[id] not have evidence that the department responsible for constructing or overseeing construction of Division 10 received federal financial assistance." (*Id.*). Now, again, in their motion to reconsider, defendants reassert their argument that there is no evidence that a federally funded department of the County violated the UFAS.

As the Court previously stated, courts have repeatedly admonished litigants that a "motion to reconsider is not at the disposal of parties who want to 'rehash' old arguments that previously were made and rejected." *S.E.C. v. Lipson*, 46 F.Supp.2d 758, 766 (N.D.Ill. 1998) (cleaned up); *Caisse Nationale*, 90 F.3d at 1269–70 (noting that a motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments"). Moreover, the Court did not misapprehend the law, and defendants' assertion that the County does not fit the definition of "program or activity" within the Rehabilitation Act is wrong. (*See* Dckt. #327 at 7).

First, defendants argue that the Court misapplied *Schroeder v. City of Chicago*, which they contend limited liability under the Rehabilitation Act to entities "at the 'department' level of a local government." (*Id.*). Not so. In *Schroeder*, the Seventh Circuit held that a former municipal firefighter could not bring suit against the City of Chicago under the Rehabilitation Act for delayed payment of his disability benefits. 927 F.2d 957, 962 (7th Cir. 1991). The discrimination at issue in *Schroeder* concerned "two little crannies of one city agency," but the suit would "sweep in the whole . . . local government." *Schroeder*, 927 F.2d at 962. Here, on the other hand, Cook County "directly engaged in discrimination" because it had legal obligations to "erect and keep in repair" the Cook County Jail. *See Rogers*, 2026 WL 1584767, at *6 (cleaned up); *see also Drayton v. McIntosh Cnty., Georgia*, 434 F.Supp.3d 1374, 1383 (S.D.Ga. 2020) (distinguishing *Schroeder* because it did not concern direct discrimination by the party being sued, i.e. the City); *Bentley v. Cleveland Cnty. Bd. of Cnty. Comm'rs*, 41 F.3d 600, 603 (10th Cir. 1994) (same).[3] Indeed, as defendants themselves note, "Illinois law provides that it shall be the duty of the county board of each county to erect and keep in repair a jail." (*See* Dckt. #327 at 4, *quoting Bell v. Sheriff of Cook Cnty.*, No. 17 C 06324, 2018 WL 6100033, at *2 (N.D.Ill. Nov. 21, 2018) (cleaned up)).

Defendants cite eight out-of-circuit cases that are either inapplicable or factually distinguishable. (*See* Dckt. #327 at 9–11). Five of the cases concern (and uphold) the constitutionality of the Rehabilitation Act and are otherwise inapplicable to the case before the

---

[3] Defendants also challenge plaintiff's reliance on *Rogers v. Dart*, 2026 WL 1584767, which they argue misinterprets the "clear legal principle" espoused in *Schroeder* that "liability under the Rehabilitation Act operates at the department or agency level, not at the level of the entire municipality." (Dckt. #350 at 2). But, as explained above, defendants' argument misconstrues the holding in *Schroeder*.

Court.[4] Three other cases outline scenarios like *Schroeder* where a plaintiff sued a larger body that was not itself responsible for the discrimination at issue.[5] This case is different. As explained above, here, "Cook County, through its legal obligations over Cook County Jail, directly engaged in discrimination" against plaintiff. *Rogers*, 2026 WL 1584767, at *6. The fact that another department *also* has responsibility for the jail does not preclude plaintiffs from suing Cook County. *Id.*, at *4–6; *Drayton*, 434 F.Supp.3d at 1382 (allowing Rehabilitation Act challenge against county for actions undertaken by the governing body); *Bentley*, 41 F.3d at 603 (permitting Rehabilitation Act claims to proceed against county board of commissioners based on claims that the board discriminated against plaintiff).

Second, defendants take issue with the Court's reliance on *Phipps v. Sheriff of Cook Cnty.*, 681 F.Supp.2d 899, arguing that *Phipps* stands for the proposition that the funds need not be *used* for a specific purpose, but does not otherwise disturb the requirement asserted by defendants that the funds must be *given* to a specific department. (Dckt. #327 at 8) (citing *Phipps* and *Schroeder*). Defendants' reliance on *Phipps* is misplaced. In *Phipps*, which was decided after *Schroeder*, the court made clear that the "County [was required to] point to evidence that the [Cook County Department of Corrections] receive[d] no federal funds of any

---

[4] *See Arbogast v. Kansas, Dep't of Lab.*, 789 F.3d 1174, 1184–86 (10th Cir. 2015); *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 243 (3d Cir. 2003); *Lovell v. Chandler*, 303 F.3d 1039, 1051 (9th Cir. 2002); *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 175–76 (3d Cir. 2002); *Jim C. v. United States*, 235 F.3d 1079, 1082 (8th Cir. 2000).

[5] *See T.W. v. New York State Bd. of Law Examiners*, 996 F.3d 87, 97–101 (2d Cir. 2021) (finding that relevant "department or agency" was the Courts of Original Jurisdiction, not New York's entire Unified Court System, where law student challenged the New York Board of Law Examiners' failure to provide disability accommodations during bar exam); *McMullen v. Wakulla Cnty. Bd. of Cnty. Comm'rs*, 650 Fed.Appx. 703, 705–07 (11th Cir. 2016) (finding that relevant "department or agency" was the Fire Rescue Department, not the County as a whole, where volunteer firefighter challenged the fire chief's decision to deny him a paid position); *Lightbourn v. Cnty. of El Paso, Texas*, 118 F.3d 421, 427 (5th Cir. 1997) (finding that plaintiffs failed to state a Rehabilitation Act claim against the Texas Secretary of State where they neither argued nor put forth evidence that the Secretary receives federal financial assistance).

sort" to demonstrate that it was beyond the Rehabilitation Act's reach. 681 F.Supp. at 912. It did not do so, and therefore summary judgment in its favor was not proper. *Id.* at 912–13. The same result is appropriate here because Bennett put forth evidence that a department within the County (Cermak Health Services) received federal funds.

Thus, for the foregoing reasons, the Court finds that defendants have failed to meet their "heavy burden" of demonstrating that their motion for reconsideration should be granted. *Patrick*, 103 F.Supp.3d at 911–12.

**B. Plaintiff's Motion for Reconsideration**

The Court next turns to plaintiff's motion, in which plaintiff seeks reconsideration of the Court's finding that issues of material fact precluded summary judgment on whether the County and the Sheriff violated the UFAS.

Plaintiff first argues, citing *Bennett v. Dart*, 953 F.3d 467 (7th Cir. 2020) ("*Bennett I*"), and *Bennett v. Dart*, 53 F.4th 419 (7th Cir. 2022) ("*Bennett II*"), that the Court's determination is barred by the mandate rule and law of the case doctrine. The mandate rule requires a lower court to adhere to the commands of a higher court on remand. *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995). The "[l]aw of the case doctrine" is corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances. *Id.* at 779.

*Bennett I* and *Bennett II* related to the district court's decisions regarding class certification. *See Bennett I*, 953 F.3d at 469; *Bennett II*, 53 F.4th at 420. The Seventh Circuit found that evaluating whether federal accessibility standards apply and were violated can be determined on a class-wide basis. *See Bennett I*, 953 F.3d at 469 (holding that class certification would not entail resolution of the merits and that certification would simply tee up the merits for

decision); *Bennett II*, 53 F.4th at 420 ("We do not see—and the district judge did not explain—why application of the Standards cannot be determined class-wide."). The Court's ruling that factual disputes preclude summary judgment therefore does not run afoul of either the mandate rule or the law of the case doctrine.

Nonetheless, Bennett correctly argues that the Court made an error of apprehension when it found that defendants may satisfy the Rehabilitation Act by "making reasonable modifications to their policies, practices, or procedures." (Dckt. #321 at 14). Bennett argues that, instead, the defendants were required to show that any departures from the UFAS provided "substantially equivalent or greater access" to and usability of the building. (Dckt. #322 at 6). In response, defendants argue that compliance with the UFAS is not necessary to comply with the Rehabilitation Act, and that they have met their burden of providing equivalent access. (Dckt. #326 at 4–6).

Defendants are incorrect. As a preliminary matter, the UFAS applies, even if equivalent access is provided. Under the implementing regulations, "[d]epartures from particular technical and scoping requirements of UFAS by the use of other methods are permitted where substantially equivalent or greater access to and usability of the building is provided." 28 C.F.R. §42.522(b)(1). Several circuits have recognized that the Rehabilitation Act's emphasis on independent living and self-sufficiency is meant to ensure that, for the disabled, "enjoyment of a public benefit is not contingent upon the cooperation of third persons." *McDaniel v. Syed*, 115 F.4th 805, 824 (7th Cir. 2024), *quoting American Council of the Blind v. Paulson*, 525 F.3d 1256, 1269 (D.C.Cir. 2008); *see also Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 74 (2d Cir. 2016). As such, when an alternative to the UFAS structural standards involves an inmate "requesting and relying on the assistance of others," courts in this District have repeatedly held

that such an alternative does not constitute equivalent access. *See, e.g.*, *Hernandez v. Dart*, No. 23 CV 16970, 2026 WL 2445402, at *7 (N.D.Ill. Aug. 1, 2026); *Rogers*, 2026 WL 1584767, at *8; *see also Craig v. Hughes*, No. 23 CV 2993, 2025 WL 3688016, at *7 (N.D.Ill. Dec. 19, 2025); *Walker v. Dart*, No. 20-cv-261, 2025 WL 3496580, at *3 (N.D.Ill. Dec. 5, 2025); *Roberts v. Dart*, No. 16 C 5560, 2018 WL 1184735, at *4 (N.D.Ill. Mar. 7, 2018); *Clemons v. Dart*, 168 F.Supp.3d 1060, 1067 (N.D.Ill. 2016).[6]

Here, it is undisputed that portable shower chairs are available in Division 10 only at the inmates' "request[]." (PSOF ¶35; DSAF ¶¶34–40). Even though, as the parties agree, there were certain instances when Bennett received a portable shower chair *without* needing to request it, (*see* DSAF ¶37), the accommodation still rendered him "completely dependent on others" to access the shower chair, and thus to use the shower, *Flora v. Dart*, No. 15 C 1127, 2017 WL 2152392, at *6 (N.D.Ill. May 17, 2017) (vacated by agreement of the parties). As such, no reasonable jury could find that the portable shower chairs in Division 10 provided equivalent or greater access.

Accordingly, the Court grants plaintiff's motion for reconsideration, (Dckt. #322), and enters partial summary judgment for plaintiffs.

**CONCLUSION**

For all of the above reasons, plaintiff's motion for reconsideration, (Dckt. #322), is granted, and defendants' motion for reconsideration, (Dckt. #327), is denied. The parties are

[6] Defendants argue that *Walker v. Dart* and *Craig v. Hughes* are inapposite because they are factually distinguishable based on the record in each case. (Dckt. #339). This argument is unavailing. In *Walker*, the court considered a "policy of having correctional officers available to assist wheelchair-using inmates up and down the Cermak ramp," 2025 WL 3496580, at *3, and in *Craig*, the Court considered a practice of "providing portable shower chairs upon request," 2025 WL 3688016, at *7, both of which—like the accommodation at issue here—require inmates to rely on a third party for assistance, and thus fail to constitute a "substantially equivalent" accommodation that complies with the Rehabilitation Act.

ordered to meet and confer to determine whether they have a mutual interest in trying to resolve this case through a referral to the assigned Magistrate Judge for a settlement conference or whether they prefer to proceed to a jury trial, and they shall file a joint status report regarding these matters no later than October 14, 2026.

**Date: September 23, 2026**

**Jeffrey I. Cummings**
**United States District Judge**